IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOSE ROSENDO ORTIZ-CONTRERAS,

        Petitioner,

    v.

MARK NOOTH, Superintendent,
Snake River Correctional Institution,

        Respondent.

Civil No. 2:15-cv-02210-BR

OPINION AND ORDER

    MARK AHLEMEYER
    Assistant Federal Public Defender
    101 SW Main Street
    Suite 1700
    Portland, OR  97204

        Attorney for Petitioner

    ELLEN F. ROSENBLUM
    Attorney General
    SAMUEL A. KUBERNICK
    Assistant Attorney General
    Department of Justice
    1162 Court Street NE
    Salem, OR  97204

        Attorneys for Respondent

1 - OPINION AND ORDER -

BROWN, Judge.

Petitioner, an inmate at the Snake River Correctional Institution, brings this habeas corpus action pursuant to 28 U.S.C. § 2254. For the reasons that follow, the Court DENIES the Amended Petition for Writ of Habeas Corpus (ECF No. 24).

## BACKGROUND

On or about August 31, 1996, Petitioner, along with his brother, Marcos Ortiz-Contreras, and his cousin, Rey Saul Coto-Hernandez (known as "Saul"), killed Hermilo Zapo-Coto by strangling him and throwing him into the Willamette River near the town of Newberg. On September 8, 1996, Petitioner and Saul flew to Mexico. Petitioner's brother, Marcos, left for Mexico sometime after Petitioner and Saul.

On September 9, 1996, Zapo-Coto's body was found in the Willamette River. Cloth material, like that from a t-shirt, was found around his neck and binding his wrists and legs. In addition, a red rope was around his neck, and it appeared to be tied to a sack containing rocks, presumably to weigh the body down in the river. The medical examiner determined the cause of Zapo-Coto's death to be asphyxia, though he was unable to determine whether the victim died due to strangulation or due to drowning in the river. A non-lethal laceration was also found on the victim's head.

Efforts to bring Petitioner, Marco, and Saul back to the United States from Mexico for prosecution were unsuccessful. In 2007, however, Petitioner returned to the Newberg area using a different name, "Rosendo Oliveras."[1] In November 2007, police officers located Petitioner at his new work place and arrested him.

On December 20, 2007, a Yamhill County grand jury indicted Petitioner on charges of Murder and Conspiracy to Commit Murder.[2] The prosecution's theory of the murder was that Petitioner aided and abetted his brother, Marcos, and cousin, Saul, in the murder of Zapo-Coto. As to the charge of conspiracy to commit murder, the prosecution's theory was that Petitioner made an agreement with one or more of the other actors (Marcos and/or Saul) to kill the victim.

On May 27, 2008, Petitioner's trial commenced. The prosecutor made clear that the State was not arguing that Petitioner had personally murdered the victim. Instead, the prosecutor contended Petitioner was an accomplice or an aider and abettor in causing his death.

To support the Conspiracy to Commit Murder charge, the prosecution relied solely upon the testimony of the owner of a

---

[1]Neither Marcos nor Saul ever returned to the United States.

[2]The grand jury also indicted Petitioner on identity theft charges in connection with his use of an assumed name, charges upon which Petitioner was ultimately convicted, but which are not at issue here.

Mexican restaurant in Newberg.  On direct examination, she testified that in late August 1996 she overheard Petitioner and unnamed others in a conversation about some money and discussion that they were going to kill someone and throw him in a river. Upon further examination, however, the witness's testimony was not so straightforward.  She testified that Petitioner may have been in her restaurant three times, and that she overheard his conversation on two of those occasions.  The conversations occurred on separate days a short time apart, but the witness could not say whether they occurred in June, July, or August of 1996.  The witness testified that one conversation was between Petitioner and two other men, and concerned plans to take a man to a tavern to get him drunk and steal his money.  The other conversation, she testified, was between Petitioner and one other man (who had also been a party to the first conversation) and involved discussion of throwing a man in the river.

The prosecutor also presented evidence that upon his arrest Petitioner confessed to being at the scene when Saul killed the victim.  Petitioner told the officers that he was very intoxicated the night of the murder, and he could not remember all of the details.  Petitioner admitted that he brought Saul a red rope from the trunk of the car when Saul yelled at him to do so.  Petitioner also told the officers that he believed the victim was already dead by the time he brought the rope to Saul.

Petitioner testified in his own defense at his trial. The substance of his testimony mirrored his statement to police. Petitioner stated that the day of the murder he drove with his brother from Washington to a residence in Newberg which where Saul, Zapo-Coto, and others lived. Petitioner was unaware of any disagreement between Saul and Zapo-Coto at first, but over dinner at a restaurant Saul told Petitioner and his brother about a dispute over money involving Saul, Zapo-Coto, and another of their roommates. Petitioner denied that Saul asked him to help Saul kill the victim. After dinner, the group returned to Saul's apartment and everyone was drinking heavily there.

At some point that evening, Saul told Zapo-Coto they were going to a party and invited him to join Saul, Marcos, and Petitioner. Petitioner testified that Marcos drove the car to a remote area and parked near a river. Saul, Marcos, and Zapo-Coto exited the car. Petitioner, who was intoxicated, initially remained in the car. Petitioner testified he heard the sound of someone being struck and heard Zapo-Coto cry out. A short time later, Saul yelled to Petitioner to bring a rope from the trunk of the car, and Petitioner complied. He brought the rope to Saul and Marcos, who were at the riverside next to Zapo-Coto's lifeless form. Petitioner thought the victim was dead because he saw Saul kick the body and the victim did not move. Petitioner denied

taking any role in tying the rope to the victim or throwing Zapo-Coto in the river.

The trial judge instructed the jury that to find Petitioner guilty of Murder, the prosecution was required to prove beyond a reasonable doubt that: (1) the act occurred in Yamhill County; (2) the act occurred on or about August 31, 1996; and (3) that Petitioner intentionally caused the death of another human being. As to Petitioner's liability under an aiding and abetting theory, the trial judge instructed the jury that a person aides or abets another person in the commission of a crime, if the person, with the intent to promote or make easier the commission of the crime, encourages, procures, advises, or assists by act or advice, the planning or commission of the crime. On the Conspiracy to Commit Murder count, the trial judge instructed the jury that the prosecutor was required to prove five elements: (1) the conspiracy occurred in Yamhill County; (2) the conspiracy occurred on or about August 31, 1996; (3) Petitioner, with the intent to commit the crime of murder; (4) agreed with another person to commit the crime of murder; and (5) a person commits the crime of murder by intentionally causing the death of another human being.

The jury found Petitioner not guilty of the charge of Conspiracy to Commit Murder, but the jury was unable to reach a verdict on the Murder charge. The vote on the Murder charge was 11-0 in favor of guilt, and the jury foreperson informed the trial

judge it was unlikely the jury would be able to reach a verdict with additional deliberation. Accordingly, the trial court declared a mistrial on that basis. The prosecutor indicated the State intended to re-try Petitioner on the Murder charge.

In August 2008, a second trial was held on the Murder charge. This time, while the prosecutor again argued that Petitioner aided and abetted one or more of the others in murdering the victim, the prosecutor did not argue there was a "conspiracy" or specific agreement to commit the murder. In support of the charge of Murder, the prosecution relied upon the same core evidence and testimony as in the first trial. The jury instructions were the same, except for the omission of the original conspiracy instruction.

The second jury found Petitioner guilty of Murder. The trial judge sentenced him to life in prison with a mandatory minimum of 300 months of imprisonment.

Petitioner filed a direct appeal, but the Oregon Court of Appeals affirmed without opinion and the Oregon Supreme Court denied review. *State v. Ortiz-Contreras*, 246 Or. App. 328, 265 P.3d 106 (2011), *rev. denied*, 351 Or. 649, 275 P.3d 968 (2012).

Petitioner then filed a petition for state post-conviction relief ("PCR"), alleging three claims of ineffective assistance of counsel. Following an evidentiary hearing, the PCR trial judge denied relief. On appeal, the Oregon Court of Appeals affirmed

without opinion and the Oregon Supreme Court denied review. *Ortiz-Contreras v. Nooth*, 272 Or. App. 664, 358 P.3d 1008, *rev. denied*, 358 Or. 145, 363 P.3d 1287 (2015).

On November 23, 2015, Petitioner filed a *pro se* Petition for Writ of Habeas Corpus in this Court. This Court appointed counsel, who filed an Amended Petition asserting five claims for relief:[3]

> **Ground One:** The trial court erred in not entering a *sua sponte* order for judgment of acquittal.
>
> **Ground Two:** Ineffective assistance of trial counsel for failing to locate and subpoena Marcos and Saul.
>
> **Ground Three:** Ineffective assistance of trial counsel for failing to use a phone conversation between Petitioner and Marcos in which Marcos confessed to the crime.
>
> **Ground Four:** Ineffective assistance of trial counsel for failing to object to a retrial based on Double Jeopardy.
>
> **Ground Five:** Ineffective assistance of trial counsel for failing to seek remedies under the Double Jeopardy Clause, short of a complete bar to a retrial.

In his Brief in Support of the Amended Petition, Petitioner addresses only the Double Jeopardy claims; he does not provide argument on the remaining claims. As to the Double Jeopardy claims, Petitioner concedes they are procedurally defaulted because he did not raise them in the state PCR proceeding. Petitioner argues, nonetheless, that his procedural default is excused under

---

[3]The Amended Petition alleges the grounds for relief in substantially more detail. For the purposes of brevity, the Court relates them as summarized by Petitioner in his Brief in Support.

*Martinez v. Ryan*, 566 U.S. 1, 132 S. Ct. 1309 (2012), and that he is entitled to relief on the merits

## DISCUSSION

## I. Ineffective Assistance for Failure to Object on Double Jeopardy Grounds - Excuse of Procedural Default Under *Martinez*

### A. Legal Standards

A petitioner does not have a federal constitutional right to effective assistance of counsel during state post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 554 (1987); *Bonin v. Calderon*, 999 F.2d 425, 430 (9th Cir. 1993). Consequently, the general rule is that any errors committed by PCR counsel cannot serve as a basis for cause to excuse procedural default. *Coleman v. Thompson*, 501 U.S. 722, 752-53 (1991). In *Martinez*, however, the Supreme Court established a limited exception to the general rule: "[i]nadequate assistance of counsel at [petitioner's] initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Martinez*, 132 S. Ct. at 1315. To establish "cause" to overcome a procedural default under *Martinez*, a habeas petitioner must show:

(1) the underlying ineffective assistance of trial counsel claim is "substantial;" (2) the petitioner was not represented or had ineffective counsel during the PCR proceeding; (3) the state PCR proceeding was the initial review proceeding; and (4) state law required (or forced as a practical matter) the petitioner to bring the claim in the initial collateral review proceeding.

*Dickens v. Ryan*, 740 F.3d 1302, 1319 (9th Cir. 2014) (citing *Trevino v. Thaler*, 569 U.S. 413, 133 S. Ct. 1911, 1918 (2013)).

Only the first two factors are at issue here. *See Sexton v. Cozner*, 679 F.3d 1150 (9th Cir. 2012) (in Oregon, claims of ineffective assistance of trial counsel must be raised in initial-review collateral proceedings), *cert. denied*, 133 S. Ct. 863 (2013). Thus, in order for this Court to proceed to the merits of Petitioner's ineffective assistance of counsel claim for failing to object to a retrial on Double Jeopardy grounds, Petitioner must (1) demonstrate that his claim is a "substantial" one, "which is to say . . . the claim has some merit[,]" and (2) establish that post-conviction counsel was ineffective. *Clabourne v. Ryan*, 745 F.3d 362, 377 (9th Cir. 2014), *overruled on other grounds by McKinney v. Ryan*, 813 F.3d 798 (9th Cir. 2015).

A claim must be examined under the standards of *Strickland v. Washington*, 466 U.S. 668 (1984) to determine whether it is substantial. Pursuant to *Strickland*, Petitioner must show both that his attorney's performance fell below an objective standard of reasonableness and that the performance prejudiced the defense. *Strickland*, 466 U.S. at 688.

The question whether an ineffective assistance of trial counsel claim is "substantial" under *Martinez* is not the same as a merits review. Rather, it is more akin to a preliminary review of a *Strickland* claim for purposes of determining whether a

certificate of appealability should issue. *Martinez*, 132 S. Ct. at 1318-19. Therefore, a court may conclude that a claim is substantial when a petitioner has shown that resolution of the merits of the *Strickland* claim would be "debatable amongst jurists of reason" or that the issues presented are "adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotations omitted).

The substantiality of the claim and ineffectiveness of post-conviction counsel factors are interwoven because "[i]f the claim of ineffective assistance of [trial] counsel is implausible, then there could not be a reasonable probability that the result of the post-conviction proceedings would have been any different." *Clabourne*, 745 F.3d at 377. Additionally, "[i]f trial counsel was not ineffective, then [a petitioner] would not be able to show that PCR counsel's failure to raise claims of ineffective assistance of trial counsel was such a serious error that PCR trial counsel 'was not functioning as the "counsel" guaranteed by the Sixth Amendment.'" *Sexton*, 679 F.3d at 1159 (quoting *Strickland*, 466 U.S. at 687).

## B. Analysis

Petitioner argues his trial counsel was ineffective for failing to object to the second trial on the Murder charge or failing to seek other remedies based on principles of Double Jeopardy. Petitioner contends that the first jury's acquittal on

the charge of Conspiracy to Commit Murder necessarily required the jury to determine that he did not have the requisite intent to commit murder. As such, Petitioner concludes, collateral estoppel prevented a retrial on the charge of Murder.

The constitutional guarantee against Double Jeopardy includes the concept of collateral estoppel. *See Ashe v. Swenson*, 397 U.S. 436, 445 (1970); *United States v. James*, 109 F.3d 597, 600 (9th Cir. 1997). In this context, collateral estoppel means that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe*, 397 U.S. at 443. Collateral estoppel analysis involves three steps:

> First, the issues in the two actions are identified so that we may determine whether they are sufficiently similar and material to justify invoking the doctrine. Second, we examine the first record to determine whether the issue was fully litigated. Finally, from our examination of the record, we ascertain whether the issue was necessarily decided.

*James*, 109 F.3d at 600 (quoting *United States v. Schwartz*, 785 F.2d 673, 681 (9th Cir. 1986)). When an element of the crimes charged in successive prosecutions is identical, the "similar and material" prong is satisfied. *United States v. Ford*, 371 F.3d 550, 556 (9th Cir. 2004). The determination of whether the issue was "necessarily decided" turns on whether an issue of fact or law was "actually litigated and determined by a valid and final judgment,

and . . . is essential to the judgment." *Bobby v. Bies*, 556 U.S. 825, 834 2152-53 (2009) (citation omitted).

The earlier determination (whether it be by judge or jury) must be given the most rational interpretation possible. *United States v. Carbullido*, 307 F.3d 957, 961-62 (9th Cir. 2002). The petitioner bears the burden of showing that the issue whose re-litigation he wishes to foreclose in a second proceeding was actually decided in the first one, and that no rational jury could have grounded its verdict on an issue other than the one the petitioner seeks to foreclose. *Santamaria v. Horsley*, 133 F.3d 1242, 1246 (9th Cir. 1998) (en banc), *amended*, 138 F.3d 1280 (9th Cir. 1998). In a federal habeas proceeding involving a claim that retrial of the allegedly precluded issue would violate double jeopardy protections, the preclusive effect of the first jury verdict is a question of federal law but the state's highest court's interpretations of state law are binding. *Santamaria*, 138 F.3d 1245.

Here, the first jury's acquittal of Petitioner on the Conspiracy to Commit Murder charge did not necessarily mean the jury decided Petitioner did not otherwise aid and abet in the murder of the victim. Under Oregon law, a person is guilty of "criminal conspiracy" if the person "agrees with one or more persons to engage in or cause the performance of" conduct constituting "a crime punishable as a felony or a Class A

misdemeanor." Or. Rev. Stat. § 161.450(1). As to liability on a charge of aiding and abetting, Oregon law provides a person is criminally liable for the conduct of another person committing the crime if "with the intent to promote or facilitate the commission of the crime," the person "aids and abets or agrees or attempts to aid or abet such person in planning or committing the crime." Or. Rev. Stat. § 161.155(2)(b). Conspiracy and aiding and abetting are "two separate and distinct notions in the criminal context" under Oregon law. *Granewich v. Harding*, 329 Or. 47, 56 n.3, 985 P.2d 788 (1999).

As noted, the judge instructed the jury at Petitioner's first trial as follows: "Oregon law provides that person commits the crime of Conspiracy, if the person with the intent to commit a crime, agrees with one or more persons to commit the crime." Tr. p. 673. As noted, the prosecution's theory on the Murder charge was that Petitioner aided or abetted one or more other people (Saul and Marcos) in the commission of the murder. In that regard, the trial judge instructed the jury that "a person aides or abets another person in the commission of the crime, encourages, procures, advises, or assists by act or advice, the planning or commission of the crime." Tr. p. 678.

A rational interpretation of the first jury's acquittal on the charge of Conspiracy to Commit Murder is that the jury decided the testimony of the restaurant owner was insufficient to establish

beyond a reasonable doubt that Petitioner entered into a prior agreement with the other actors to get the victim drunk, kill him, and throw him in the river. The jury did not necessarily determine thereby that the prosecutor failed to prove Petitioner aided and abetted in the murder. The conversations overheard by the restaurant owner were separate and distinct from the events involving Petitioner, Saul, Marcos, and the victim on the actual night of the murder. The prosecutor introduced evidence that, on that night, Petitioner learned Saul wanted to kill the victim, that Petitioner was present when his brother and cousin were tying the victim up and throwing him in the river, and that, at the very least, Petitioner took a rope from the trunk of the car and handed it to Saul to tie up the victim. As such, the jury rationally could have concluded that the prosecution failed to establish the existence of a prior agreement to commit the murder, and that conclusion is separate and distinct from the jury's inability to reach a verdict on whether Petitioner aided and abetted others on the night the victim was murdered. *See United States v. Herbert*, 698 F.2d 981, 985 (9th Cir. 1983) ("[c]onspiracy requires a prior agreement to commit an offense" whereas "[a]iding and [a]betting does not require a prior agreement, but only that the defendant consciously share in a criminal act, regardless of the existence of any agreement") (citing *Pereira v. United States*, 347 U.S. 1, 11-12 (1954)).

Under these circumstances, reasonable trial counsel could have concluded that objection to the second trial on Double Jeopardy grounds would have been futile. As such, trial counsel did not perform deficiently by not moving for dismissal of the Murder Charge or seeking other remedies. In any event, Petitioner has not shown a reasonable likelihood that, even if trial counsel had moved for dismissal on double jeopardy grounds, the trial judge would have granted the motion. Because trial counsel was not ineffective, Petitioner's PCR trial counsel was likewise not ineffective for failing to allege the Double Jeopardy claims, and, therefore, Petitioner's procedural default is not excused under *Martinez*. *See Sexton*, 679 F.3d at 1159 (where trial counsel was not ineffective, habeas petitioner does not present a substantial claim for the purposes of *Martinez*); *Clabourne*, 745 F.3d at 377 ("if the claim of ineffective assistance of counsel is implausible, then there could not be a reasonable probability that the result of the post-conviction proceedings would have been different"). Accordingly, Petitioner is not entitled to relief on his claims that trial counsel provided constitutionally ineffective assistance by failing to object to a retrial or seek other remedies under the Double Jeopardy Clause.

## II.  Remaining Claims

As noted, Petitioner does not address the remaining grounds for relief in his Brief in Support of the Petition. Accordingly,

Petitioner has failed to sustain his burden of demonstrating why he is entitled to relief on his unargued claims. *See Lampert v. Blodgett*, 393 F.3d 943, 970 n.16 (9th Cir. 2004) (petitioner bears burden of proving his case); *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2003) (same). Nevertheless, the Court has reviewed Petitioner's unargued claims and is satisfied that Petitioner is not entitled to relief on the remaining claims alleged in his Petition for Writ of Habeas Corpus.

## CONCLUSION

For these reasons, the Court DENIES the Amended Petition for Writ of Habeas Corpus (ECF No. 24) and DISMISSES this action.

The Court DENIES a certificate of appealability as Petitioner has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this ___10ᵗʰ___ day of May, 2018.

_____
ANNA J. BROWN
United States District Judge